539 A.2d 876

Joseph J. LOEFFLER and Margaret A. Loeffler

v.

Edward J. McSHANE and Rosemary McShane, H/W and Eastern Abstract, Inc. and First American Title Insurance Company and Charles J. Zone and Erma Moore and Stephen McShane and Freida McShane, Co–Partners T/A McShane Realty. Appeal of Charles J. ZONE.

Superior Court of Pennsylvania.

Argued Oct. 28, 1987.

Filed March 31, 1988.

Joseph P. Caracappa, Fairless Hills, for appellant.

William T. Renz, Doylestown, for Loeffler, appellees.

Before CAVANAUGH, BECK, and HESTER, JJ.

BECK, Judge:

This is an appeal by Charles J. Zone, the principal corporate officer and part owner of Eastern Abstract, Inc., a title insurance company. The issue is whether a corporate officer who supervises a settlement on the refinancing of a mortgage may be held personally liable for the loss suffered by the mortgagors when he negligently authorized the payment of the mortgagors' settlement funds to the wrong party. The Court of Common Pleas of Bucks County determined that appellant Zone was liable in his individual capacity to the mortgagors, Edward and Rosemary McShane. We affirm the order of the trial court.

The facts of this case are not in dispute. We incorporate the following statement of facts which appeared in the excellent opinion of Judge George T. Kelton.

This action of mortgage foreclosure was filed after a series of events in which original defendants and mortgagors, Edward and Rosemary McShane, sought to refinance a mortgage on a property owned by them and located at 1538 Super Highway, Middletown Township, Bucks County, Pennsylvania. The original plaintiffs in this action were Joseph and Margaret Loeffler, holders of the first mortgage on the property. Joseph Loeffler has died since the commencement of this lawsuit, and his interest in the litigation has passed to his widow, Margaret Loeffler.

Intending to refinance the Loeffler mortgage, Mr. and Mrs. McShane decided to borrow $61,500.00 from Heritage Bond and Mortgage Company. These funds were to be used in part to satisfy the McShane's mortgage to the Loefflers. The amount due thereon was approximately $49,900.00.

The McShanes requested additional defendant, Eastern Abstract, Inc., an agency of additional defendant, First American Title Insurance Company, to provide title insurance. The title insurance was to be issued with First American as the insurer and the settlement to be conducted by First American's agent, Eastern Abstract. Settlement was held on January 19, 1979 at the offices of Eastern Abstract.

At settlement, Eastern Abstract did not secure a payoff statement from the mortgagee-plaintiffs, the Loefflers; instead, it secured a statement from the defendant, Edward McShane, one of the mortgagors. Then, when the proceeds of settlement were distributed by Eastern Abstract, the check to pay off the original Loeffler mortgage, instead of being made payable to the Loefflers, was made payable to "McShane Realty, agent for Joseph and Margaret A. Loeffler."

McShane Realty was a partnership consisting of additional defendants Stephen McShane and Frieda McShane (Edward's brother and mother respectively). The settlement check of $49,782.47 was deposited by the realty

company in its own accounts, never was paid to the Loefflers and ultimately was used to pay McShane Realty business obligations.

This check was prepared and issued by Erma Moore, the settlement clerk for Eastern Abstract, Inc. Although Ms. Moore had no distinct recollection of the settlement itself, she did testify that she would not have made the check out in such a manner unless she had either received authorization from her superior, additional defendant, Charles J. Zone, the principal corporate officer of Eastern Abstract, or had received written authorization from the Loefflers. Ms. Moore further testified that in either event, she would have made a notation as to the manner of authorization in the settlement file.[1] Mrs. Loeffler testified that *she* gave no such authorization. Mr. Zone testified that he "might have" approved the transaction because he was aware of the fact that Stephen McShane of McShane Realty had served as agent for the Loefflers in the past. He stated that he thought he "would have" given authorization to the title clerk to change the payee.

Trial Court Op. at 1–3.

At the conclusion of a non-jury trial, the court found that Mr. Zone had in fact been the one who authorized the payment of settlement funds to McShane Realty. The trial court also concluded that Mr. Zone had conducted the settlement in a negligent manner. On October 21, 1986, the court announced on the record: 1) that the original mortgage on the home of Edward and Rosemary McShane was unpaid; 2) that mortgagors Edward and Rosemary McShane were liable to mortgagee Margaret Loeffler, and 3) that Mr. Zone, Eastern Abstract, First American Title Insurance Company and Stephen and Frieda McShane of McShane Realty were each jointly and severally liable to Edward and Rosemary McShane. Following the filing of exceptions, the court confirmed its decision and entered a final order on April 20, 1987.

1. Mr. Zone testified at trial that the settlement file could not be located.

The sole question raised on appeal is whether Mr. Zone is immune from tort liability. Appellant Zone does not contest the trial court's conclusion that he is a tortfeasor. Zone instead argues that the trial court erred as a matter of law by holding him personally liable for the damage caused by his negligence. This argument is without merit.

■ Under Pennsylvania law, the general rule is that the owners and managers of corporations may be held financially accountable for their wrongful, injury-producing conduct. *See, e.g., The Village at Camelback Property Owners' Ass'n v. Carr,* 371 Pa.Super. 452, 463, 538 A.2d 528, 533–34 (1988); *Moy v. Schreiber Deed Security Co.,* 370 Pa.Super. 97, 535 A.2d 1168 (1988); *Shonberger v. Oswell,* 365 Pa.Super. 481, 530 A.2d 112 (1987); *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896 (1987).

In *Wicks v. Milzoco Builders, Inc.,* the Pennsylvania Supreme Court set forth the following standard for assessing the liability of a corporate officer:

Pennsylvania law recognizes the participation theory as a basis for tort liability.

The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

503 Pa. 614, 621, 470 A.2d 86, 90 (1983) (citing 3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137, at 207 (perm. ed. rev. 1975)). The Court further stated that under the participation theory, a corporate officer is liable for "misfeasance", i.e., the improper performance of an act, but not "mere nonfeasance", i.e., the omission of an act which a person ought to do. *Id.,* 503 Pa. at 621, 470 A.2d at 90.

■ We find that the trial court properly applied the participation doctrine to the facts of the case sub judice. The trier of fact found that appellant "specifically directed the particular act to be done" which resulted in the loss of the mortgagors' settlement funds. The record clearly supports an inference that appellant, without first obtaining the permission of either the mortgagor or the mortgagee, ordered his clerk to pay the settlement check to a party who was not authorized to receive the check. This active involvement in the misallocation of funds involved both misfeasance and negligence. The combination of the two is clearly sufficient to support a finding of personal liability on the part of a corporate officer.[2] *See Malone v. Pierce,* 231 Pa. 534, 80 A. 979 (1911) (president of corporation individually liable for negligently ordering change in method by which land was to be excavated); *Amabile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 376 A.2d 247 (1977) (engineer who acted as agent for corporation may be held individually liable for designing car wash in negligent manner).

Appellant maintains that the participation doctrine does not apply where a person is injured by a corporate officer after making an informed decision to enter into a business relationship with the corporate entity. He notes that Edward and Rosemary McShane chose Eastern Abstract to handle the refinancing of their mortgage, that the McShanes were aware that Eastern Abstract had been incorporated under the laws of Pennsylvania, and that the McShanes have a full right of action directly against Eastern Abstract. With this in mind, he cites *Bala Corporation v. McGlinn,* 295 Pa. 74, 79, 144 A. 823, 824 (1929) for the proposition that "one who deals with a corporation, knowing it to be such, cannot enforce an individual liability against the officers or agents who act for the corporation."

---

**2.** We need not reach the issue of whether a corporate officer could be held strictly liable in his individual capacity in the absence of any evidence of a culpable state of mind or of a failure to observe reasonable commercial standards. *See Bank of Landisburg v. Burruss,* 362 Pa.Super. at 327, 524 A.2d at 901 n. 6.

448

*See also W.F. Meyers Co. v. Stoddard,* 363 Pa.Super. 481, 526 A.2d 446 (1987).

 The flaw in this reasoning is that *Bala Corporation* limits individual corporate liability only within the context of an action for breach of contract. *See Wicks v. Milzoco Builders, Inc.,* 503 Pa. at 620–21, 470 A.2d at 89. *Bala Corporation* simply applied the familiar legal doctrine that "[w]henever a corporation makes a contract, it is the contract of the legal entity of the artificial being created by the [corporate] charter, and not the contract of the individual members." 295 Pa. at 79, 144 A. at 824. Thus, the breach of the contract is the breach of a promise made by the corporation, and not the breach of any promise extended by the corporate officer. It follows that only the corporation may ordinarily be held liable for contract damages.[3]

On the other hand, in a tort action, even if the plaintiff has entered into a contractual relationship with the corporation, the corporate officer is not insulated from liability. *See Shonberger v. Oswell, supra* (clothing supplier who entered into consignment agreement with corporation may maintain conversion action against corporate president). This is because the basis for tort liability is not the breach of the contract with the corporation but rather the breach of an independent legal obligation to avoid injury to the plaintiff. Such an obligation will often exist precisely because the law imposes special duties on parties who deal with one another in a business setting. *See generally Prosser and Keeton on the Law of Torts* § 92, at 657–58 (5th ed. 1984).

**3.** A corporate officer is of course liable for the breach of any promises or representations which he extends not in his capacity as an officer but personally in his individual capacity. *The Village at Camelback Property Owners Ass'n, supra,* 371 Pa.Super. at 463, 538 A.2d at 534. Moreover, if a corporate officer is also a shareholder in the corporation, in appropriate circumstances, he may be held individually liable under the equitable doctrine of piercing the corporate veil. *Id.,* 371 Pa.Super. at 461, 538 A.2d at 532–33. *See also* 8A Pennsylvania Law Encyclopedia *Corporations* § 281 (1971) (discussing contractual liability of corporate officers).

In the case sub judice, the trial judge concluded that as principal corporate officer of the title insurance company, appellant owed the mortgagors a duty to use reasonable care in handling their financial resources. On appeal, appellant has not denied that this duty exists or that this duty was violated. We therefore conclude that appellant was guilty of misconduct, and that he should not be permitted to shift the blame for his own affirmative misconduct to the corporation. As the Pennsylvania Supreme Court stated in the *Wicks* case: "The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however, relieve the individual of his responsibility." 503 Pa. at 619 n. 5, 470 A.2d at 89 n. 5 (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir.1978)).

The trial court's imposition of joint and several liability was proper. Order affirmed.