# Michael v. Gettysburg Foundry Specialties Co.

C.P. of Adams County, no. 94-S-482.

*Marc G. Tarlow,* for plaintiff.
*Charles O. Beckley III,* for defendant.

SPICER, *P.J.,* December 22, 1995—

## OPINION ON PRELIMINARY OBJECTIONS

In their first amended complaint, filed July 27, 1995, plaintiffs alleged, inter alia, the following:

(1) Gettysburg Foundry Specialties Co., a Pennsylvania business corporation, owns land adjacent to that owned by plaintiffs, in Adams County. We will refer to this defendant as "GFS."

(2) Creed White, an adult individual, has been president of GFS since 1987 to present and "has taken direct responsibility of the manner in which GFS has addressed" problems described in the complaint. ¶2.2. We will refer to this defendant as "White."

(3) GFS operates a foundry on its property and has contaminated ground water by depositing what has been described as wastedross in unlined pits. Four wells are said to have been contaminated "[a]s a direct and proximate result of the defendants' wrongful activities." ¶15. These wells are said to account for one-third of the available water production on plaintiff's land. Commercial activity and development purposes are alleged, as is the unavailability of public water services.

(4) There is also a leaking fuel storage tank on GFS property. Although plaintiffs allege a possibility of contamination, either at present or in the future, there is no specific allegation that ground water on their lands has, in fact, been contaminated.

(5) GFS has violated the Clean Streams Law, 35 P.S. 691.3 et seq., the Solid Waste Management Act, 35 P.S. 6018.301 et seq., and the Storage Tank and Spill Prevention Act, 35 P.S. 6021 et seq.

(6) White is personally liable because he "intentionally, willfully, recklessly and negligently failed to take serious action to remedy" the situation. ¶2.2

Defendants have filed preliminary objections in the nature of a demurrer, motion for more specific pleading and a motion to strike. The last motion was filed as an alternative to a demurrer, requesting that a demand for attorney's fees and punitive damages be dismissed.

Standards for ruling on demurrers are well established. The court must accept as true all of the well pleaded facts in the complaint, as well as any reasonable inferences to be drawn therefrom. Before a demurrer can be sustained, it must be clear on the face of the complaint that the claims may not be sustained and that the law will not permit a recovery. *Mellon Bank N.A. v. Fabinyi,* 437 Pa. Super. 559, 650 A.2d 895 (1994); *220 Partnership v. Philadelphia Electric Company,* 437 Pa. Super. 650, 650 A.2d 1094 (1994); *Wicks v. Milzoco Builders Inc.,* 503 Pa. 614, 470 A.2d 86 (1983).

The question to be decided in ruling on a motion for a more specific pleading is whether the complaint is sufficiently clear to enable defendants to prepare a response, informs them with accuracy and completeness of the specific basis on which recovery is sought so they may know without question upon what grounds to make their defense. 2 Goodrich-Amram 2d §1017(b):21. Superior Court has said that the extent to which plaintiffs are required to plead involves a matter of broad discretion in the trial court, since the standard of pleading set forth in Rule 1019(1) is incapable of precise measurement. *In re Barnes Foundation,* 443 Pa. Super. 369, 661 A.2d 889 (1995).

With these principles in mind, we will turn our attention to specific objections.

### Counts Against Creed White

White requests that Counts I, II and III be dismissed as against him. He argues that the amended complaint

states no basis for the imposition of personal liability. He points out that wrongful acts are alleged to have occurred prior to 1988, that no particular actions are ascribed to him and that he became president of GFS in 1987. Plaintiffs respond by citing various paragraphs which describe a continued course of inaction on the part of GFS, but it is apparent that the amended complaint will rise or fall as to White on the basis of the averment that he failed to take "serious action" to remedy the source and cause of contamination.

Normally, an officer of a corporation is not responsible for torts committed by the company, or its agents, employees and other officers. However, liability may be asserted on a participation theory or by piercing the corporate veil. *First Realvest Inc. v. Avery Builders Inc.,* 410 Pa. Super. 572, 600 A.2d 601 (1991). This case involves the former theory.

"In *Wicks v. Milzoco Builders Inc., [supra,]* the Pennsylvania Supreme Court set forth the following standard for assessing the liability of a corporate officer:

"Pennsylvania law recognizes the participation theory as a basis for tort liability.

"The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

"503 Pa. 614, 621, 470 A.2d 86, 90 (1983) (citing 3A Fletcher, *Cyclopedia of the Law of Private Cor-*

*porations,* §1137, at 207 (perm. ed. rev. 1975)). The court further stated that under the participation theory, a corporate officer is liable for 'misfeasance,' *i.e.,* the improper performance of an act, but not 'mere nonfeasance,' *i.e.,* the omission of an act which a person ought to do. *Id.* 503 Pa. at 621,1470 A.2d at 90." *Loeffler v. McShane,* 372 Pa. Super. 442, 446, 539 A.2d 876, 879 (1988).

While accepting this rule, plaintiffs nevertheless contend that the actual holding in *Wicks* sustains their position. In that case, landowners complained that excessive surface water ran off higher elevations in a development, flooding yards and making neighboring dwellings uninhabitable. The trial court sustained preliminary objections and dismissed the complaint. Superior Court affirmed, but Supreme Court reversed. The gravamen of the action against corporate officers was that, knowing that natural drainage would concentrate the development's water and sewer on other land, they failed to perform adequate soil testing and provide adequate grading and landscaping for drainage facilities. In summarizing its holding, Supreme Court said:

"However, the pertinent averments in these complaints can be read . . . , generally, that the individual appellees actually knew that the location of the proposed Monroe Acres Development created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed." *Wicks, supra* at 623, 470 A.2d at 90.

Stated another way, defendants in that case, knowing that their action involved an unreasonable risk of harm to plaintiffs, proceeded to build. This is a classic example of negligence and quite different from alleging that

White knew that a condition existed and failed to take steps to alleviate it. In *Loeffler,* the act giving rise to liability was ordering a clerk to pay a settlement check to someone not authorized to receive it. Superior Court stressed, in this last cited case, that the trial court adhered to the rule by requiring an act by the corporate.

Plaintiffs also rely on *Kaites v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 108 Pa. Commw. 268, 529 A.2d 1148 (1987). They are quick to point out that the case involved a failure of proof, not a ruling on a preliminary objection. Since the case involved enforcement of a law by a Commonwealth agency, it is not surprising that preliminary objections were not involved. In fact, that case involved an administrative appeal, with the argument being made that a corporate officer was not a "person" subject to an abatement order. While it may be interesting to note that Commonwealth Court said officers may be liable, the holding was that evidence supported nothing more than simple nonfeasance. The court said that, while nonfeasance can be the basis for individual liability, it must be more than mere or simple nonfeasance.

Although it might be argued that contamination by GFS constituted a continuing nuisance and that a duty existed to abate it, there are no allegations describing any act done by White, or on his orders. Ignoring conclusions about White's state of mind, we have allegations which are unquestionably nonfeasance. No allegations support a finding that inaction rose to a level sufficiently egregious to support liability. While there are allegations that GFS broke the law, nothing is said to support any inference that White was personally directed to abate the contamination, as was authorized under *Kaites,* and refused to obey. The three counts must be dismissed as to him.

## Demurrers and Motions for More Specific Pleadings

GFS' contentions about the complaint may be summarized by saying that plaintiffs have failed to describe facts from which legal causation may be determined. As part of this contention, it points out that well locations and drilling dates, as well as ground water patterns are not described. It is true that plaintiffs have not specifically pointed out the type of contamination in their wells, but the reasonable inference to be drawn is that such pollution is of the type released into the ground water by GFS. We consider the information, the lack of which GFS complains, to be evidentiary in nature. We again point out that all factual averments in the complaint must be considered. Ultimate facts, but not evidence, must be alleged. *Wicks, supra.*

Turning our attention to the specific causes of action, we find that public and private nuisances, and not trespass, are alleged. GFS is quick to point out that, while harm other than an invasion of a possessor's interest is not necessary in a trespass action, it is a requirement in nuisance cases. The Restatement (Second) of Torts, distinguishes between the two actions. Significant harm, that is of a kind that would be suffered by a normal person in the community or by property in normal condition and used for normal purposes, is required for private nuisances. §821F; *Kembel v. Schlegel,* 329 Pa. Super. 159, 478 A.2d 11 (1984). On the other hand, to recover for a public nuisance, plaintiffs must show harm of a different kind than that suffered by the general public and that the harm was suffered while exercising a right common to the general public. §821C(1); *Graham Oil Co. v. BP Oil Co.,* 885 F. Supp. 716 (W.D. Pa. 1994).

Allegations are obviously sufficient, in our opinion, to sustain both causes of action. The amended complaint clearly suffices with respect to a private nuisance. It also describes a specific, private harm suffered as a result of an infringement of a public right. The CSL, *supra,* among others, clearly states that citizens of this Commonwealth have a right to clean water, and makes a violation of the act a public nuisance. The harm to plaintiffs' land results from contaminated water and is different from that suffered by the general public.

GFS has not raised the question of standing, but it appears clear that plaintiffs may sue. The STSPA specifically provides for private causes of action. §6021.1305. The trend in interpreting other legislation is to allow private actions. See *e.g.,* savings clauses in SWMA, *supra,* §6018.607; CSL §691.701; *Cento-lanza v. Lehigh Valley Dairies Inc.,* 540 Pa. 398, 658 A.2d 336 (1995); *Smith v. Weaver,* 445 Pa. Super. 461, 665 A.2d 1215 (1995).

It is obvious that any case involving contamination is usually far too complicated to be settled on the basis of pleadings. Although the specific type of contamination in wells has not been set forth, a reasonable inference is that it involves the contaminants loosed in the soil by GFS. Although the fuel spill is lacking somewhat in specificity, enough has been alleged to require GFS to respond.

Furthermore, allegations are specific enough to enable GFS to intelligently prepare its defense.

Demurrers and motions for more specific pleadings are denied.

### Attorney's Fees

Probably because defendants filed a tardy brief, plaintiffs have overlooked the question of attorney's fees.

Thus, we have been deprived of the benefit of those arguments.

Plaintiffs, in fact, asked the court to dismiss the preliminary objections, under a local rule, because of tardiness. We have chosen to address most of the contentions raised by defendants, but decline to dismiss the request for fees. While we have found nothing sanctioning fees in the CSL or SWMA, the STSPA authorizes recovery. §6021.1305(f). It is true, as GFS suggests, such fees are recoverable only pursuant to an agreement or statutory authority. *PennDot v. Manor Mines Inc.*, 523 Pa. 112, 565 A.2d 428 (1989). Our ruling is made without prejudice to GFS raising the issue again, when the record is more fully developed.

## Punitive Damages

Initially, it is the court's function to determine if the evidence supports a claim for punitive damages. *Rizzo v. Michener*, 401 Pa. Super. 47, 584 A.2d 973 (1990). Reckless indifference to property rights may justify imposition of such damages. *Kirkbride v. Lisbon Contractors Inc.*, 385 Pa. Super. 292, 560 A.2d 809 (1989). In this court's opinion, the amended complaint alleges enough to expose GFS to punitive damages. Violations of the law have been alleged, as well as prolonged conduct which may be found to constitute reckless indifference to plaintiff's interest. We have held, on previous occasions, that preliminary objections are poor means of attacking punitive damages, unless the right to same is clearly inappropriate. They are not clearly inappropriate. Therefore, we deny the motion to strike and the demurrer as to those damages, without prejudice to GFS seeking a review when the record has been more fully developed.

## ORDER

And now, December 22, 1995, preliminary objections of Creed F. White are sustained and the first amended complaint is dismissed as against him. Otherwise, preliminary objections are overruled. Corporate defendant, Gettysburg Foundry Specialties Co., shall have 20 days from the date this order is mailed to counsel in which to file an answer.

Plaintiffs may file an amendment to the first amended complaint within the same 20 days, with respect to Mr. White.