**FIRST CAPITAL CORPORATION,**
Plaintiff,

v.

**COUNTRY FRUIT, INC., Alfredo Vergara, Inversiones Vezco, Ltda, and Daniel H. Kolbach, Defendants.**

**Civil Action No. 97–7979.**

United States District Court,
E.D. Pennsylvania.

Sept. 1, 1998.

Stephen M. Packman, Archer & Greiner, Haddonfield, NJ, for Plaintiff.

Daniel H. Kolbach, Haddon Heights, NJ, pro se.

## MEMORANDUM AND ORDER

KATZ, District Judge.

*Factual Background*

In this case, plaintiff First Capital Corporation (FCC) seeks to recoup its losses from the collapse of an international produce company, Country Fruit—a collapse which was evidently hastened along by defendants' will-ful misuse of funds and invoices. On April 7, 1997, defendants Vergara, the President of Country Fruit, and Kolbach, the Secretary of Country Fruit, signed various documents to obtain a line of credit for Country Fruit from plaintiff FCC in the amount of $800,000. *See* Pl. Mot. for Summ. Judg. Ex. A. In addition to the loan agreement, defendants signed a revolving Credit Note, an Accounts Receivable Financing Agreement, and Corporate and Personal Guarantees. *See id.* Ex. A. Defendant Kolbach also signed a Trustee and Custodian Agreement, as did Vergara, in favor of First Capital, in which he agreed to undertake the following duties on behalf of First Capital:

i) concurrently with each sale of goods or services by Country Fruit, make or cause to made a record of each sale and creation of a receivable;

ii) daily receive all mail addressed to Country Fruit, and remove from FCC's post office box all mail addressed to Country Fruit;

iii) receive and take possession of all cash, checks, or other instruments for the payment of money from customers of Country Fruit, maintain and safely keep proper records of such payments, and promptly deliver to FCC all such payments in the identical form received;

iv) report promptly to FCC any dispute or claim relating to any receivable and all pertinent facts in connection with any such dispute or claim;

v) maintain and safely keep possession and control of supporting evidence for receivables in the form of invoice copies, bills of lading, shipping and delivery receipts, and like documents and forward the same to FCC upon request;

vi) notify FCC promptly and earmark, segregate, and hold returned goods as FCC's property whenever any goods which have been sold shall be returned to Country Fruit; and

vii) perform such other services relative to any of the foregoing as FCC may from time to time request.

*See id.* Ex. A.

Kolbach failed to maintain accurate invoices for Country Fruit's receivables, and instead submitted sales documentation to FCC representing $329,018.60 in Country Fruit sales that had never occurred. *See id.* Ex. A; Pl. Mot. for Recons. Exs. A, B. Nor did Kolbach forward payments received by Country Fruit on receivables to FCC, but rather $49,787.50 in receivables were collected directly and retained by Country Fruit. *See* Pl. Mot. for Summ. Judg. Exs. A, E. FCC was unaware that the documentation provided by Kolbach was false, and advanced funds to Country Fruit. *See id.* Ex. C. FCC has not recovered any of the $49,787.50 in receivables that Kolbach failed to forward to it, nor has it ever received any documentation to support the alleged $329,018.60 of sales. *See id.* Ex. E.

In an interview with Thomas Cloud, a private investigator, Kolbach admitted the following:

> Kolbach: Well, Alfredo, he give checks to growers, and in Chile, the law of checks is very, very strict. If you give a check that doesn't have funds, you go to jail.
>
> Cloud: It's more serious.
>
> Kolbach: Yeah.
>
> Cloud: Than here.
>
> Kolbach: Yeah, absolutely.
>
> Cloud: Okay.
>
> Kolbach: So, he gave those checks and he said, we had to do whatever it takes to cover those checks.

1. In the course of his discussion with the investigator, Kolbach expressed some resentment at defendant Vergara:

   Cloud: The point I'm trying to make is your, your background is accounting, you know that some of this stuff was a way for him to—

   Kolbach: Well, this is where I am trying to make a point.

   Cloud: Your eyes are being opened to this, I guess is what you said earlier, afterwards. Hindsight is always better, we know that.

   Kolbach: He always came through with whatever he said, you know, let's do this, you know, and then you're going to get then, and then it will happen.

   Cloud: Yeah.

   Kolbach: I didn't have any reason to believe that this time it wouldn't happen. You know what I mean?

   Cloud: What's your feeling now?

Cloud: Okay.

Kolbach: And he asked me to, you know, create—we, we have some product that was coming in. He said pre-invoice that product, and that is what I did.

Cloud: So, you pre-invoiced it and sent that information to First Capital, and then you were able to get funds from them?

Kolbach: And cover the checks. . . .

Cloud: How much money would you say— how many, how much money is involved with the invoices that you pre-invoiced, as you call them.

Kolbach: I don't know. I don't know numbers. . . . It is a high number.

Mot. for Reconsideration Ex. A, 20–21.

Kolbach and Cloud continued their discussion:

> Cloud: Okay, so you needed $200,000 to cover the checks that he had issued to growers.
>
> Kolbach: Right.
>
> Cloud: And that was gotten by writing—
>
> Kolbach: Phony invoices.
>
> Cloud: Phony invoices.
>
> Kolbach. Yes.
>
> Cloud: Okay. And would it be $200,000 in phony invoices?
>
> Kolbach: I don't remember.

*Id.* at 21–22.[1]

Kolbach answered the complaint in this action *pro se* and, in response to the breach

   Kolbach: I was taken for a ride. I wasted four years of my life, wasted, you know, I had three months without work. *Id.* at 30 . . . .

   Kolbach: I've been trying to put this thing away for a long time. Today I noticed that the payroll taxes weren't paid, and I talked to Alfredo today.

   Cloud: Did you?

   Kolbach: About kit. he said, yeah, yeah I going to—I going to fix that, you know, and all this stuff. Now I'm going to have the IRS on my back in no time, in no time, and that's no good either. *Id.* at 32.

   Kolbach: I feel taken for a ride, and I should have known not to do things, but, you know, what you believe in somebody, and that is the only way to keep your job—

   Cloud: Didn't keep it anyway. isn't hindsight better? You shouldn't have done it because you

of contract claim, stated that he had been ordered by Vergara to: "pre sale product that was on transit to the US. Because [Vergara] needed money to pay growers in Chile," and that he had been following orders from Vergara. *See* Mot. for Summ. Judg. Ex. B. As for the fraud count, Kolbach admitted as follows:

> Information sent to First Capital was false. Mr. Vergara instructed me to pre sale the product that was in transit in order to pay growers in Chile. He told me that once the product arrived we would switch the invoices as sales were performed. Most of the money went to Chile, very little was use[d] to pay regular payables of the company.

*Id.*

Plaintiff filed suit in federal court and has attempted to serve the Chilean defendants pursuant to letters rogatory, and moved for summary judgment on counts three and five, which this court denied for failure to comply with Rule 56(e). Plaintiff has moved once again for partial summary judgment against Kolbach on count three, a breach of contract count, and count five, a fraud count.[2]

*Discussion*

*Breach of Contract*

■ As for the breach of contract claim, a cause of action arises when a party's performance is due under a contract, and that party does not fully perform. *See* Restatement (Second) of Contracts § 235(2) cmt. b. The law allows for some leeway for a failure of performance through the doctrine of substantial performance, and what constitutes sufficient performance—or a breach—depends upon the surrounding circumstances and the construction of the contract at issue. *See West Development Group, Ltd. v. Horizon Financial,* 405 Pa.Super. 190, 592 A.2d 72, 77 (Pa.Super.1991). However, the doctrine of substantial performance cannot be invoked by one who has willfully, carelessly, or in bad faith failed to perform. *See id.* 592 A.2d at 76. Absent a willful omission, a question of substantial performance is one for the jury, not for the court. *See id.* at 77.

■ In this instance, defendant Kolbach failed to perform a number of his duties under the Fiduciary Agreement: 1) he failed to keep accurate documentation, as required, and has admitted that he submitted false invoices; 2) he failed to deliver receivables to plaintiff, as required under the Fiduciary Agreement, but retained them instead; 3) he failed to inform plaintiff of any dispute or claim relating to receivables and failed to inform plaintiff that the documentation provided and invoices pledged as security were

---

didn't keep the job anyway, but—and here, he reaps the benefit.

> Kolbach: He is very comfortable down in Chile . . . .

> Cloud: Pretty convincing then, I guess he is, huh?

> Kolbach: he has away to talking things, you know, that, that you really believe him, you really believe him.

> Cloud: Okay.

> Kolbach: I don't want to tell—I don't want to say also that he is just staging the whole thing. It might be true, you know, that, that he hasn't been able to sell the farm yet.

> Cloud: But he did ask you, but he did ask you to falsify information?

> Kolbach: Right, yeah. *Id.* at 35.

2. A court shall grant an unopposed motion for summary judgment if doing so is "appropriate." Fed.R.Civ.P. 56(e). Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law. *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990). In general, Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, when ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom *in* favor of the non-moving party. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir. 1987); *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986).

Plaintiff has cited to Pennsylvania law in its motion, and this Court has found no reason to utilize the law of any other jurisdiction, so it will apply Pennsylvania law to the claims at issue here.

false; 4) he did not provide supporting invoices to plaintiff, as required. *See* Pl. Mot. for Summ. Judg. Exs. A, B, C, D; Mot. for Recon. Ex. A. In sum, the record demonstrates that defendant Kolbach breached the agreement, and that he did so willfully. Summary judgment is therefore appropriate for count three of the complaint.

*Fraud*[3]

 The elements of fraud are: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused by the reliance. *See Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994). A person cannot be held liable for fraudulent misrepresentation unless he made the statement himself, or authorized another person to make that statement, or in some manner participated in it. *See Goodman v. DeAzoulay,* 554 F.Supp. 1029, 1037 (E.D.Pa.1983). Fraud must be proven by evidence that is "clear, precise, and convincing." *Snell v. State Examining Bd.,* 490 Pa. 277, 416 A.2d 468, 470 (Pa.1980). Kolbach made misrepresentations to plaintiff through his creation of phony invoices and false supporting documentation. *See* Pl. Mot. for Summ. Judge. Ex. B; Mot. for Recons. Ex. A. Kolbach was aware of the falsity of these representations, particularly given his background in accounting. *See* Mot. for Recons. Ex. A. Kolbach created the false documents so that Country Fruit could obtain advances on the loan. *See id.* Plaintiff justifiably relied upon Kolbach's detailed documentation and misrepresentation, and has sustained monetary damages that stem from Kolbach's fraud. *See* Mot.

for Summ. Judg. Exs. A, E; Mot. for Recons. Ex. A. Given the evidence put before this court, summary judgment is entered on the fraud count.

---

3. Kolbach cannot pass liability on to Country Fruit alone. The fact that an officer is acting for a corporation may also make the corporation liable, but it does not relieve that individual of his responsibility. *See Loeffler v. McShane,* 372 Pa.Super. 442, 539 A.2d 876, 880 (Pa.Super.1988). Under Pennsylvania law, "the general rule is that the owners and managers of corporations may be held financially accountable for their wrongful, injury producing conduct." *See id.* 539 A.2d at 878. As such, a corporate officer is liable for misfeasance, but not mere nonfeasance, i.e., the omission of an act which a person ought to do. This particular type of liability will occur in tort even when the director or officer was acting as the corporation's agent when performing the challenged acts. *See A & F Corp. v. Bown, et al.,* Civ. A. No. 94–4709, 1996 WL 466909 at *4–5 (E.D.Pa. Aug. 15, 1996). A corporate officer will only be liable in a breach of contract action under a participation theory where, as here, a defendant has assumed obligations in his individual capacity. *See Loeffler,* 539 A.2d at 879.