Nicholas **GIANGRECO** and
Maureen E. **Giangreco**,

v.

**UNITED STATES LIFE INSURANCE CO. and MBNA America.**

**No. CIV.A. 99–3131.**

United States District Court,
E.D. Pennsylvania.

April 17, 2001.

Peter J. Mooney, White And Williams, Philadelphia, PA, William Matthews, Philadelphia, PA, for U.S. Life Ins. Co., MBNA America.

Charles D. Mandracchia, Mandracchia & Modesti LLC, Skippack, PA, for Nicholas Giangreco, Maureen Giangreco.

## MEMORANDUM

WALDMAN, District Judge.

### I. Introduction

This case arises out of the vehicular death of Nicholas Giangreco, Jr. Plaintiffs are the insured's parents and are the administrators and beneficiaries of his estate. At the time of his death, Mr. Giangreco was insured under a group policy issued by defendant United States Life Insurance Company ("U.S. Life") which coverage he purchased through a solicitor employed by defendant MBNA America ("MBNA").

This suit was initiated after plaintiffs' claim for benefits was denied. They assert claims for breach of contract, bad faith, fraudulent misrepresentation and violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law ("UTPCPL") against U.S. Life, and claims for fraudulent misrepresentation and violation of the UTPCPL against MBNA. Subject matter jurisdiction is based on diversity of citizenship. Defendants filed a motion for summary judgment. Plaintiffs filed a motion for summary judgment on their breach of contract claim in which they do not actually seek judgment, but rather a ruling that a pertinent policy exclusion be "stricken."

### II. Legal Standard

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case are "material." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. All reasonable inferences from the record must be drawn in favor of the non-movant. *See id.* at 256, 106 S.Ct. 2505.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *See J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986)), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). A party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ridgewood Bd. of Educ. v. N.E. for M.E.,* 172 F.3d 238, 252 (3d Cir. 1999); *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

### III. Facts

While the parties differ on how they should be interpreted and what conclusions should be drawn from them, the pertinent facts are essentially uncontroverted. They are as follows.

On July 18, 1997, defendant U.S. Life issued a certificate of coverage under a group life insurance policy to the insured. The policy provided benefits of $100,000 for accidental death or dismemberment caused while the insured was occupying a private passenger automobile. Under a section entitled "Accidental Death and Dismemberment Benefits," there is a subsection entitled "Exclusions" in which expressly excluded from coverage is "any loss ... caused directly, indirectly, wholly or partly by ... being intoxicated or under the influence of any drug, unless taken as prescribed by a physician."

The "Exclusions" heading appears in bold capital letters on the back of the page on "Accidental Death and Dismemberment Benefits." The policy terms are set forth on five two-sided pages and a final one-sided page. The substance of the Exclusions subsection is written in the same type as are all other sections and is no less prominent. The top of the page containing the Exclusions subsection is labeled "Accidental Death and Dismemberment Benefits (Continued)." The Exclusions subsection does not appear in the table of contents.

The insured purchased the coverage during a telephone solicitation from defendant MBNA. The cost of the insurance was one dollar for the first month and $7.95 for each month thereafter. The MBNA telemarketer informed the insured that he would receive the terms of coverage at his home within ten days and that if he was not satisfied, he could cancel coverage by calling a toll free number during the first month. The telemarketer mentioned the amount of coverage but did not mention the exclusions or any other specific provisions of the policy.

The insured timely received the terms of coverage. He did not cancel the coverage. His premium was charged on his MBNA credit card.

The policy terms were mailed to Mr. Giangreco with a cover letter dated July 18, 1997. That letter contained an express admonition to him to "review the [enclosed] provisions carefully."

In the early morning hours of August 21, 1997, the insured was killed in an automobile accident in Upper Merion Township, Montgomery County, Pennsylvania. The accident occurred when a car driven by Renee Snyder swerved over one lane to the right causing a car in the lane next to the insured to swerve to the right into the insured's lane which in turn caused the insured to swerve to the right into an access lane. After swerving into the access lane, Mr. Giangreco's car struck a curb and catapulted into a telephone pole. The vehicle turned over and the insured was ejected. A police officer and another witness state that the entire accident oc-

curred within a few seconds.[1]

The insured was legally intoxicated at the time of his death.[2] A toxicology report prepared for the Coroner records that there were also traces of marihuana in the insured's blood. The toxicologist concluded that the combination of drugs in the insured's body was "sufficient to render him impaired in judgment, perception, alertness, coordination, response time, and the usual sense of care or caution" at the time of the accident.

Renee Snyder, the driver of the car which initially swerved, was determined to be legally intoxicated at the time of the accident. She pled guilty on February 20, 1998 to homicide by vehicle.

Plaintiffs submitted a claim for accidental death benefits shortly after the accident. On December 2, 1997, U.S. Life denied the claim on the basis of the intoxication exclusion. Upon reconsideration, U.S. Life again denied the claim on March 17, 1998.

## IV. Discussion

### A. Breach of Contract

Plaintiffs argue that the Exclusions subsection should not apply because it is not clearly or conspicuously presented.[3] They contend alternatively that the phrase "directly, indirectly, wholly or partly" is ambiguous and thus should be stricken from the policy.

■   While strictly construed, exclusions to insurance coverage will be given effect when they are clearly worded and conspicuously displayed. *See Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir. 1985); *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 567 (1983); *First Pennsylvania v. National Union,* 397 Pa.Super. 612, 580 A.2d 799, 802 (1990).

■   The heading titled "Exclusions" appeared in bold at the top of the page followed by a list of exclusions clearly written and sequentially numbered.[4] Plaintiffs stress that the exclusions appear on the back of a page. All of the policy terms, however are set forth on two-sided pages. It cannot be said that anything written on the back of pages in a two-sided document is inconspicuous. The Exclusions section occupies its own page. If one were simply to skim each of the six pages, he could not

1. Plaintiffs and defendants not surprisingly differ on whether Mr. Giangreco had the time and distance reasonably to avoid the collision. They each theorize, however, from the same record evidence.

2. A Montgomery Hospital toxicology report records the insured's blood alcohol content at .134%. As the blood sample forming the basis of this report was taken nine hours after the accident, the insured's blood alcohol content may have been even higher at the actual time of the accident. A later National Medical Services report prepared for the Coroner records the insured's blood alcohol content as .12%.

3. Plaintiffs also suggest that Pennsylvania law places strict limitations upon exclusion provisions such as the one in the insured's policy. *See* 31 Pa.Code § 89.77; 40 P.S. § 753(B)(11). The provision of the Insurance Code to which they refer, however, indicates that such limitations apply only to individual policies. The only limitation imposed upon group policy exclusions provides that "[e]xclusions which are ambiguous or unfairly discriminatory are not acceptable." *See* 31 Pa. Code § 89.94. Moreover, the "in consequence of" language of § 753(B)(11) is conceptually equivalent to the "results from or is caused by" language in the U.S. Life group policy exclusion.

4. Plaintiffs stress that "Accidental Death and Dismemberment Benefits (Continued)" appears on the line above "Exclusions." Rather than rendering the policy confusing, the juxtaposition of the two headings emphasizes that the exclusions apply to the accidental death and dismemberment benefits.

miss the exclusions. They are clear and conspicuous. *See,* e.g., *United States Fidelity and Guaranty v. Griggs,* 341 Pa.Super. 286, 491 A.2d 267, 269 (1985).

Plaintiffs also note that the Exclusions section does not appear in the table of contents. This could be of some concern in the case of a long or complex policy document. This is not such a case. An insured cannot reasonably expect to understand the concise terms of a policy simply by perusing the table of contents. Moreover, there is no contention, and certainly no evidence, that Mr. Giangreco was misled in any way by the table of contents or failed to read the actual policy terms.

■ Unambiguous terms in an insurance contract should be given their plain and ordinary meaning. *See St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991); *Coregis Ins. Co. v. Larocca,* 80 F.Supp.2d 452, 455 (E.D.Pa. 1999). A policy provision is ambiguous if "reasonably intelligent men on considering it in the context of the entire policy would differ as to its meaning" and if the use of "more precise language could have eliminated the ambiguity." *Id.* (quoting cases).

■ Plaintiffs contend that because John Hyland, the Director of Policy Benefits for U.S. Life, could not give precise definitions for each of the terms "directly, indirectly, wholly or partly," they must be ambiguous. This is not a fair characterization of Mr. Hyland's deposition testimony. Mr. Hyland stated that "directly" means a "straight cause and effect," and "indirectly" means a "contributory cause." He stated that "wholly" means "there is nothing else causing" the loss and "partly" is "a portion" or "a contributory effect." He continued that "partly" means "a cause that contributes to the end result." This is consistent with the ordinary usage of these terms. Further, as Mr. Hyland noted, the phrase as a whole makes clear that the

exclusion will apply whenever there is a causal connection between the loss and the use of alcohol or unprescribed drugs, whether such use was the sole cause of the loss or contributed to the loss in any way.

It is true that Mr. Hyland did not define each level of causation in terms of exact percentages. This does not, however, render the questioned phrase ambiguous. Of course, even in a case where a policy term is ambiguous, the term is not stricken as plaintiffs suggest. Rather, the term is given the reasonable meaning most favorable to the insured. *See D'Allessandro v. Durham Life Ins. Co.,* 503 Pa. 33, 467 A.2d 1303, 1305 (1983). Thus, "any reasonable interpretation offered by the insured" would apply. *McMillan v. State Mut. Life Assur. Co. of America,* 922 F.2d 1073, 1075 (3d Cir.1990). Significantly, plaintiffs have proffered no alternative interpretation, reasonable or otherwise.

The phrase "caused directly, indirectly, wholly or partly" consists of commonly used and generally understood words and is not ambiguous. As strictly construed, the language clearly conveys that if the use of unprescribed drugs or alcohol by the insured plays any role in causing a loss, that loss is not covered.

■ Plaintiffs alternatively argue that even if the exclusion remains as written, a reasonable factfinder could conclude that the accident was not caused even indirectly or partly by the insured's use of drugs or alcohol and that the accident was caused wholly by Ms. Snyder's actions. The court agrees.

Ms. Snyder initiated the chain of events resulting in the insured's death. Ms. Snyder was intoxicated at the time. Defendants contend that the description of the accident indicates that an unimpaired driver would have been able to avoid injury. Two eyewitnesses, however, state that the

entire accident sequence consumed a few seconds and that the insured's car only lost control after striking the curb. The account of one of these witnesses expressly supports plaintiffs' reconstruction of the pertinent events. One could reasonably find on the record presented that the accident and loss were not caused "directly, indirectly, wholly or partly" by the insured's use of alcohol or drugs.

### B. *Bad Faith*

■ To sustain a claim under 42 Pa. C.S.A. § 8371 for bad faith denial of insurance benefits, a plaintiff must show with clear and convincing evidence that the insurer lacked a reasonable basis for denying the claim. *See Polselli v. Nationwide Mutual Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir.1994); *Terletsky v. Prudential Property & Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). Failure to conduct a reasonable investigation based upon available information may demonstrate bad faith. *See Parasco v. Pacific Indemnity Co.*, 920 F.Supp. 647, 655 (E.D.Pa. 1996). Mere negligence or bad judgment by the insurer, however, is insufficient. *See Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 (E.D.Pa.1998).

■ U.S. Life quite reasonably concluded that the insured was legally intoxicated at the time of the accident. It appears from the record, however, that U.S. Life did little investigation other than to review the police and toxicology reports. Yet, as noted, the accounts of the police officer and another witness suggest that even a fully sober driver may have been unable to avoid the fatal crash. Plaintiffs' claim was initially denied before the outcome of proceedings against Ms. Snyder and denied upon reconsideration after her vehicular homicide conviction. While not necessarily dispositive, this conviction presumably established that Ms. Snyder's conduct was at least a direct and substantial factor in causing the death of Mr. Giangreco. *See Com. v. Skufca*, 457 Pa. 124, 321 A.2d 889, 894 (1974); *Com. v. Rementer*, 410 Pa.Super. 9, 598 A.2d 1300, 1306 (1991).

A factfinder could reasonably conclude on the record presented that U.S. Life denied plaintiffs' claim without conducting a reasonable investigation and without a reasonable basis. It would not be unreasonable to conclude on the record presented that U.S. Life reflexively denied the claim upon learning that the insured was intoxicated without meaningfully pursuing issues of causation.

### C. *Fraudulent Misrepresentation*

Plaintiffs assert that U.S. Life fraudulently misrepresented the terms of the policy by failing carefully to explain the Exclusions section, and that MBNA fraudulently misrepresented the terms of the policy when its telemarketer failed to mention the exclusions.

■ To sustain a claim for fraud, a plaintiff must show a material misrepresentation made with knowledge of its falsity or reckless disregard for its truth and with the intent of misleading another into relying upon it; justifiable reliance on the misrepresentation; and, a resulting injury proximately caused by the misrepresentation. *See First Capital Corp. v. Country Fruit, Inc.*, 19 F.Supp.2d 397, 401 (E.D.Pa. 1998); *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994).[5]

---

**5.** While plaintiffs use the words "fraudulent omission" or "fraudulent concealment" nowhere in their pleadings or submissions, the court notes that fraud may also arise from the intentional concealment of material facts which is calculated to deceive the other party and which the withholding party has a duty to disclose. *See Duquesne Light Co. v. Westing-*

■ There is no evidence or even allegation that the MBNA representative suggested in any way that the policy contained no exclusions or provided coverage even for accidents caused by the insured's intoxication. The representative encouraged the insured to read the policy terms and informed him that if he were unsatisfied, he could cancel at no cost within thirty days. A cover letter from MBNA to Mr. Giangreco which accompanied the policy terms contained an express admonition to the insured to "review the provisions carefully." The policy terms were concise. The exclusions were conspicuous and clear. One cannot reasonably find from the evidence of record that either defendant is responsible for any misrepresentation to Mr. Giangreco about the provisions of the insurance policy.

## D. *UTPCPL*

Plaintiffs' UTPCPL claim is predicated upon the provisions which make it unlawful to misrepresent the standard, quality, grade, style or model of goods, or to engage in fraudulent conduct which creates a likelihood of confusion or misunderstanding. *See* 73 Pa.S.A. §§ 201–2(4)(vii) & (xxi). To support this claim, plaintiffs rely upon the identical facts asserted in support of their fraud claims.

■ A plaintiff who seeks to assert a claim under the provisions of the UTPCPL governing fraudulent conduct must first establish the elements of common-law fraud. *See DiLucido v. Terminix Intern., Inc.*, 450 Pa.Super. 393, 676 A.2d 1237, 1240 (1996); *Prime Meats, Inc. v. Yochim*, 422 Pa.Super. 460, 619 A.2d 769, 773 (1993). As already noted, one cannot reasonably find from the competent evidence of record that either defendant misrepresented anything about the policy or engaged in fraud.

## V. Conclusion

Plaintiffs are not entitled to have the intoxication exclusion stricken and their motion for summary judgment on the breach of contract claim has thus been denied. As there are disputed issues of material fact regarding causation of the fatal accident and U.S. Life's handling of plaintiffs' claim, defendants' motion for summary judgment has been denied. In so doing, however, the court did not focus on the fraud and UTPCPL claims. As plaintiffs have not sustained such claims, the court's order denying defendants' motion without specification of counts or claims will be supplanted.

This action will proceed on plaintiffs' breach of contract and bad faith insurance claims against defendant U.S. Life. An appropriate order will be entered.

---

house Elec. Co., 66 F.3d 604, 611–12 (3d Cir.1995); *Sevin v. Kelshaw*, 417 Pa.Super. 1, 611 A.2d 1232, 1236 (1992). All of the other elements of fraudulent misrepresentation pertain to such a claim for non-disclosure. *See Duquesne Light*, 66 F.3d at 612 n. 6. This includes causation or a showing that "had [disclosure] been made, the transaction would not have been consummated." *Sevin*, 611 A.2d at 1237. There is no competent evidence of record from which one could find that Mr. Giangreco would not have purchased coverage had he known it did not extend to accidents in any way caused by drug or alcohol use. This is not a case where the pertinent information was "not discoverable by other reasonable means" or where a defendant "was the only reasonable source of the information." *See Duquesne Light*, 66 F.3d at 612. *See also City of Rome v. Glanton*, 958 F.Supp. 1026, 1038–39 (E.D.Pa.), *aff'd*, 133 F.3d 909 (3d Cir.1997). It is uncontroverted that Mr. Giangreco timely received the terms of coverage, had ample opportunity to review the terms which were clearly and concisely stated, was expressly admonished to do so by MBNA and was given a month to cancel coverage.

## ORDER

AND NOW, this day of April, 2001, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that the court's order of March 30, 2001 denying the parties' motions for summary judgment is vacated and a supplemental order will be entered.

## ORDER

AND NOW, this day of April, 2001, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that plaintiffs' Motion for Summary Judgment (Doc. # 20) is **DENIED** and defendants' Motion and Supplemental Motion for Summary Judgment (Docs. # 22 & 50) are **GRANTED** as to plaintiffs' claims for fraudulent misrepresentation and violation of the Pennsylvania Unfair Trade Practices & Consumer Protection law, and are otherwise **DENIED.**