Theresa POMROY, Petitioner,

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 6, 1999.

Decided April 11, 2000.

Harold N. Fliegelman, Norristown, for petitioner.

Lesley Smith Oakes, Philadelphia, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

LEADBETTER, Judge.

Petitioner Theresa Pomroy appeals from an order of the Department of Public Welfare (DPW), which affirmed the discontinuance of petitioner's nursing home medical assistance benefits (MA). We affirm.

In November 1991, petitioner was severely injured in an automobile accident that left her permanently comatose. The record indicates that at the time of the accident, petitioner was the mother of four minor children, two of whom are currently under the age of twenty-one years. Petitioner entered Methodist Nursing Home in Philadelphia and in June 1992 applied to DPW for MA to cover her nursing home costs. DPW approved MA for petitioner effective June 1, 1992.

Following the accident, petitioner, through her guardian ad litem and husband, filed a lawsuit in the United States District Court for the Eastern District of Pennsylvania against the other parties involved in the accident. The suit was eventually settled for $1,000,000.00, and petitioner received a net disbursement of $600,000.00 after the deduction of attorneys' fees and costs. The trial court approved the settlement agreement on August 6, 1992, directing that the funds payable to petitioner be deposited into bank accounts and/or certificates of deposit and marked "Not To Be Withdrawn Until Application Is Made By All of The Following: Gerald Savino, Anthony Savi-

no and Donald F. Manchel, Esquire."[1] The funds, however, were placed in a Prudential Securities account with signatory authority to access the funds given to Gerald Savino, Anthony Savino and Donald Manchel, Esquire. Petitioner's receipt of the settlement proceeds was never reported to DPW.

In September 1995, a County Assistance Office (CAO) employee discovered the existence of the securities and learned that the funds totaled $439,051.99 at that time. The CAO then notified petitioner that DPW intended to discontinue her MA because of excess resources.[2] Petitioner timely appealed this decision. In addition, petitioner's family filed a petition with the Orphans' Court of Philadelphia County to appoint a guardian of petitioner's person and estate. In September 1996, the court appointed Donald Manchel, Esquire, Gerald Savino, and Anthony Savino plenary guardians of petitioner's estate and further appointed Gerald Savino and Anthony Savino plenary guardians of petitioner's person. The order further directed that the guardians of petitioner's estate could not expend the principal of her estate without permission of the court in accordance with 20 Pa.C.S. § 5536.[3] A hearing followed petitioner's appeal from the CAO's denial notice. The hearing officer denied petitioner's appeal, determining that the settlement funds were available for petitioner's use in meeting nursing home costs. The Secretary of DPW affirmed, and this petition for review followed.[4]

On appeal, petitioner contends that the proceeds from the tort settlement, which were placed in the Prudential Securities account, should not be counted as resources in determining her continued eligibility for MA because such funds are not "actually available" as required by 55 Pa. Code § 178.1(f).[5] Specifically, petitioner contends that the proceeds from her tort settlement are not "actually available" because she was (and remains to be) comatose, no one acted as her guardian or attorney-in-fact when DPW terminated her MA and access to the funds was controlled by three other individuals, all of whom refused to surrender the funds to pay for her nursing home care.[6] Petitioner also asserts that the appointment of

1. The record does not indicate the present circumstances of petitioner's husband. However, the court understands from the argument of counsel that petitioner's husband is deceased. Gerald and Anthony Savino are petitioner's brothers and Donald Manchel represented petitioner in the personal injury action.

2. An individual is "medically needy" and eligible for MA when his or her available resources total $2400 or less. 55 Pa.Code § 178 (App.A).

3. Section 5536 provides in part that:
   All income received by a guardian of the estate of an incapacitated person ... in the exercise of reasonable discretion, may be expended in the care and maintenance of the incapacitated person, without the necessity of court approval. The court, for cause shown and with only such notice as it considers appropriate in the circumstances, may authorize or direct the payment or application of any or all of the income or principal of the estate of the incapacitated person, for the care, maintenance or education of the incapacitated person, ...
   20 Pa.C.S. § 5536(a).

4. Based on the issue raised, this court's scope of review is limited to a determination of whether an error of law was committed, Oriolo v. Department of Public Welfare, 705 A.2d 519 (Pa.Cmwlth.1998), a question over which we exercise plenary review.

5. 55 Pa.Code § 178.1 provides in pertinent part as follows:
   (a) An applicant/recipient is resource eligible for MA if his total resources considered in determining resource eligibility do not exceed the MA resource limit ... for the appropriate MA Program....
   ....
   (f) Resources which are not excluded shall be reviewed to determine if they are actually available. Only those resources which are actually available are considered resources when determining MA eligibility.

6. Anthony Savino testified at the hearing that his understanding was that the settlement funds would be used for petitioner's children. N.T. at 17–18.

**398**

guardians of her person and estate in September 1996 has no retroactive effect on her MA eligibility when her benefits were terminated. According to petitioner, there was no way or mechanism by which she could have accessed the funds in the Prudential account when DPW terminated her MA.

■ DPW argues, on the other hand, that both its regulations and appellate case law support the conclusion that petitioner had excess resources available to her and that such excess resources warranted the termination of her MA. We agree with DPW that petitioner's tort recovery, which well exceeds the $2400 resource eligibility limit, warrants the termination of MA. As DPW correctly notes, DPW is considered the payer of last resort. 55 Pa.Code § 178.6(a). Therefore, DPW's regulations require MA applicants to take reasonable steps to obtain those resources available to them unless there is good cause for not doing so. 55 Pa.Code § 178.1(g). A resource is any "real or personal property which a person has or can make available for partial or total support." 55 Pa.Code § 178.2. Moreover, an applicant is required to use third-party resources, which include tort proceeds, to the fullest extent possible before MA is required to make payment. 55 Pa.Code § 178.6(a), (b)(7).[7] We do not accept petitioner's argument that the refusal of her brothers and former attorney to spend petitioner's funds for her care and mainte-

nance renders the funds unavailable in determining petitioner's continued eligibility for MA. To begin, we note that in determining the availability of a resource, if the applicant/recipient for MA is the sole owner of the resource, the resource is presumed available. 55 Pa.Code § 178.4(e)(1).[8] Here, although petitioner cannot physically access her funds, there is no dispute that she is the sole owner of the Prudential account.

■ Moreover, the law is clear that an applicant or assistance recipient, or a fiduciary acting on her behalf, has an obligation to pursue and use resources which could be made available prior to receiving any further governmental assistance. Specifically, in *Lozada v. Department of Public Welfare*, 105 Pa.Cmwlth. 67, 522 A.2d 1192 (1987), this court terminated the petitioner's MA when subsequent tort litigation instituted on the petitioner's behalf resulted in a settlement in excess of $200,-000. There, we held that any resource which an individual has or can use must be considered available to him and counted when determining eligibility for further benefits. In *Armlovich v. Department of Public Welfare*, 49 Pa.Cmwlth. 603, 411 A.2d 893 (1980), this court affirmed the denial of general assistance benefits to the petitioner on the grounds that she was ineligible due to her failure to apply for her deceased husband's railroad retirement benefits, an available resource that could be accessed for support prior to re-

7. Section 178.6(a) provides that:
   An applicant/recipient may have sources other than MA that cover the cost of his medical services and care. The third-party liability sources which are available to pay for medical services and care shall be identified and used to the fullest extent possible before payment is made by MA. [DPW] is the payer of last resort.
   55 Pa.Code § 178.6.

8. Petitioner argues on appeal that pursuant to 55 Pa.Code § 178.4(e)(5) she enjoys a rebuttable presumption that her funds were not available because a non-applicant, whose consent was required to disburse the assets, refused to provide such consent. Section

178.4(e)(5) provides that: "If consent to dispose of resources is needed but withheld by a [non-applicant], assume that the resource is not available. The *shared ownership* and the [non-applicant's] refusal to dispose of the resource shall be verified. The unavailability of resources is verified at application and no less often than at each reapplication." 55 Pa. Code § 178.4(e)(5) (emphasis added). We agree with DPW, however, that the plain language of this section renders it clear that it is to be applied to situations where the applicant and the non-consenting non-applicant jointly own the resource at issue. Here, petitioner is the sole owner of the Prudential Securities account.

sorting to public assistance. Finally, in *Estate of Wyinegar,* 711 A.2d 492 (Pa.Super.1998), the Superior Court affirmed a court of common pleas order allowing the guardian of Robert Wyinegar, an incapacitated person who was receiving MA for institutionalized care, to elect to take against Wyinegar's wife's will over the objection of the wife's estate. The Superior Court held that the election was in Wyinegar's best interests because DPW's regulations require an applicant/recipient to take steps to obtain and make available resources to which he is or may be entitled to and the failure to take an election against a spouse's estate could compromise the incapacitated person's entitlement to continued MA.

We also find *Stoudt v. Department of Public Welfare,* 76 Pa.Cmwlth. 576, 464 A.2d 665 (1983) instructive. There, the petitioner's MA was discontinued when the nursing home where she resided learned that she had become the beneficiary of a testamentary trust, which provided that the trustee was to pay so much of the income and principal of the trust as in his sole discretion was deemed necessary for the maintenance and support of the petitioner. On appeal from the termination of the petitioner's MA, the petitioner's representative argued 1) that the trust was not an available resource because the petitioner had no incidents of ownership in the corpus or income of the trust, and 2) the trustee had not abused his discretion in failing to pay out a portion of the trust for the petitioner's support and maintenance because she was sufficiently provided for through medical assistance. Noting that the purpose of medical assistance is to furnish care to those whose resources are insufficient to meet the cost of their care, we concluded that the trust was an avail-

able resource because not only was the trustee required to administer the trust in the interest of the trust beneficiary but the beneficiary had the power to compel the trustee to do so as well. We believe the principles underlying *Stoudt* are applicable here.

■ In reaching this conclusion, we are unpersuaded by petitioner's argument that the lack of a technically appointed legal representative warrants the conclusion that her settlement proceeds are not "actually available." Petitioner is incapacitated and cannot physically access her funds, while the signatories to the account possess the power to disburse funds, but have no beneficial ownership interest therein. Although the signatories were not (at least initially) formally appointed to a fiduciary position, we believe such a relationship arises as a matter of law under these circumstances. Whether characterized as some form of implied trust or a de facto guardianship [9] (and indeed this situation does not fit neatly into any specific category recognized in the law) there can be little doubt that a fiduciary relationship arises where one is legally vested with absolute power to control funds owned by an incompetent. Moreover, as has been noted, "Despite the differences in the legal circumstances and responsibilities of various fiduciaries, one characteristic is common to all: a person in a fiduciary relationship to another is under a duty to act for the benefit of the other as to matters within the scope of the relationship." Restatement (Third) of Trusts § 2 cmt. b (Tentative Draft No. 1, 1996).

For all of these reasons, we conclude that the settlement funds solely owned by petitioner and generated to compensate

9. The defining distinction between a trustee and the guardian of another's property is that the trustee has legal (but not equitable or beneficial) title to the funds, whereas the guardian has no such legal title. The fiduciary obligation, however, is equally applicable to both relationships. *See generally* Restatement (Third) of Trusts §§ 2 and 5 cmts. (Ten-

tative Draft No. 1, 1996). Here, the account was titled "Gerald Savino, Guardian Ad Litem of Theresa Pomroy, Incompetent," although Savino's powers and duties as guardian ad litem had ended with the conclusion of the lawsuit, and his authority over the funds was no greater than that of the other two signatories.

her for her current state of health are an available resource, and the order of the Department is affirmed.

### *O R D E R*

AND NOW, this 11th day of April, 2000, the order of the Department of Public Welfare in the above captioned matter is hereby AFFIRMED.