# Zaborowski v. Hospitality Care
# Center of Hermitage Inc.

C.P. of Mercer County, no. 2002-1188.

*William G. McConnell,* for plaintiff.
*Mark E. Mioduszewski,* for defendants.

DOBSON, *J.,* December 10, 2002—The matter before this court for disposition is defendants Hospitality Care Center of Hermitage Inc.'s Faye M. Cassity's and Robert W. Bible's preliminary objections to plaintiff Michael Zaborowski's complaint.

Defendants collectively filed preliminary objections in the nature of demurrer to Counts IV and VII-X of Zaborowski's complaint, as well as to Zaborowski's request for punitive damages, attorney's fees and treble

damages. Defendants also collectively filed preliminary objections in the nature of a motion to strike certain paragraphs of Zaborowski's complaint. For the reasons set forth below, defendants' preliminary objections will be sustained with respect to Counts IV, VII, IX and X and Zaborowski's request for attorney's fees and overruled with respect to Count VIII and Zaborowski's request for punitive damages. With respect to defendants' preliminary objections for a more specific pleading, the objections will be sustained in part and overruled in part.

Additionally, Hospitality individually filed a preliminary objection in the nature of demurrer to Count VI. The court will overrule this objection. Cassity and Bible, as individuals, filed preliminary objections in the nature of demurrer to Counts II, IV-V and VII-XI. The court will sustain these objections.

For purposes of reviewing preliminary objections based upon demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000). When presented with preliminary objections whose end result would be the dismissal of a cause of action, a court should sustain the objections only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). (citations omitted) Furthermore,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be

resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

Hospitality is a skilled care nursing home facility licensed in Pennsylvania to provide services to those unable to independently care for themselves. Hospitality also participates in the Medicare/Medicaid program. As such, it is subject to various statutes applicable to Medicare and Medicaid, as well as provider agreements between itself and Medicare and Medicaid. Cassity and Bible, at all relevant times to the instant matter, were directors and officers of Hospitality. In addition, Cassity and Bible are its sole shareholders.

On September 4, 1997, Zaborowski, acting as an agent for his mother Anna M. Zaborowski (plaintiff decedent), admitted plaintiff decedent as a resident to Hospitality pursuant to the terms and conditions of a written admissions agreement.[1] Plaintiff decedent remained a resident of Hospitality from the date of her admission until her death on April 15, 2001. Zaborowski maintains that the quality of care delivered by Hospitality was properly provided to plaintiff decedent until December 2000.

Around December 2000, Hospitality terminated its then president, Steven Bible, and director of nursing, Lori Bible. Following their discharge, Hospitality, at the direction of Cassity and Bible, retained the services of

---

1. According to Zaborowski, he has been unable to locate his copy of the admissions agreement and therefore was unable to attach a copy of said agreement to his complaint.

Nubridge Development Inc. to manage and operate Hospitality. Sometime thereafter, Hospitality sent a letter to plaintiff decedent informing her of the change in management and also representing that "[a]s always, [Hospitality's] priority is to provide quality care and to provide a safe and comfortable environment for [its] residents."

Hospitality failed to provide such an environment. Instead, under Cassity's and Bible's sole control and Nubridge's management, Hospitality failed to properly maintain plaintiff decedent's quality of care. As a result of the inadequate care provided by Hospitality, plaintiff decedent suffered various conditions and injuries, including but not limited to bleeding around the areas of the G-tube and lungs, significant weight loss, choking, dehydration, seizures, labored respiration, stage I pressure sores and death. Consequently, Zaborowski commenced the instant suit by filing a survival action and a wrongful death action against Hospitality, Nubridge, Bible and Cassity.

## I. MOTION FOR DEMURRER

### A. *Participation Theory*

Cassity and Bible filed preliminary objections in the nature of demurrer to Counts II (negligence), IV (negligence per se), V (respondeat superior),[2] VII (third party

---

2. The court notes that Zaborowski's complaint contains two causes of action, one for respondeat superior and another for breach of contract, that are set forth as Count V. From a review of the complaint, it is clear that Zaborowski intended the contract action to be Count VI and this court will treat it as so for the purposes of this opinion.

contract),[3] VIII (breach of fiduciary duty), IX (fraud),[4] X (Unfair Trade Practice and Consumer Protection Law),[5] and XI (wrongful death) of Zaborowski's complaint. Zaborowski argues that Cassity and Bible can be held personally liable for each of these counts under the participation theory. Cassity and Bible contend that they cannot be held personally liable since the alleged actions were taken by them in their capacity as directors and officers of Hospitality, a corporate entity. The court sustains these objections.

Under the participation theory, "the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity. . . .

"Pennsylvania law recognizes the participation theory as a basis of liability.

"The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the cor-

---

3. Based upon the discussion in part I.G. of this opinion, discussed *infra,* the court will strike Count VII in its entirety.

4. Based upon the discussion in part I.C. of this opinion, discussed *infra,* the court will strike Count IX in its entirety.

5. Cassity's and Bible's liability under Count X is discussed *infra,* in part I.E. of this opinion.

poration in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein. . . .

"Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance [but not for mere nonfeasance]." *Wicks v. Milzoco Builders Inc.,* 503 Pa. 614, 621-22, 470 A.2d 86, 90 (1983). (citations omitted)

In *Wicks,* the plaintiffs, who were homeowners in a subdivision called Monroe Acres, brought a cause of action alleging that the corporation and its individual shareholders were liable in tort. *See id.* at 616-17, 470 A.2d at 87. Plaintiffs' complaint stated, "in the most general terms, that [the individual shareholders] were aware, or should have been aware, of potential drainage problems at Monroe Acres and, therefore, were negligent in failing to take appropriate measures to eliminate, or at least minimize, such problems."[6] *Id.* at 617-18, 470 A.2d at 88. The court held these allegations were sufficient to establish a cause of action in tort against the individual shareholders under the participation theory because the shareholders were personal participants in the tortious acts allegedly committed by the corporation. *See id.*

Similarly, in *Loeffler v. McShane,* 372 Pa. Super. 442, 539 A.2d 876 (1988), the Superior Court addressed the issue of whether a corporate officer, who supervised a settlement on the refinancing of a mortgage, could be

---

6. In fact, the Supreme Court noted that these allegation were arguably impermissibly vague. See *Wicks,* 503 Pa. at 618 n.2, 470 A.2d at 87 n.2.

held personally liable for the loss suffered by the mortgagors where the corporate officer negligently authorized the payment of the mortgagor's settlement funds to the wrong party. See *id.* The corporate officer admitted his negligence, but argued that the trial court erred as a matter of law by holding him personally liable. See *id.*

The Superior Court rejected the corporate officer's argument and held that he was liable in his individual capacity to the mortgagor under the participation theory. See *id.*

The court reasoned that "[t]he trier of fact found that appellant 'specifically directed the particular act to be done' which resulted in the loss of the mortgagors' settlement funds. The record clearly supports an inference that appellant, without first obtaining the permission of either the mortgagor or the mortgagee, ordered his clerk to pay the settlement check to a party who was not authorized to receive the check. This active involvement in the misallocation of funds involved both misfeasance and negligence. The combination of the two is clearly sufficient to support a finding of personal liability on the part of a corporate officer." *Id.* at 447, 539 A.2d at 879. (footnote omitted)

Instantly, under Count II of the complaint, Zaborowski sets forth a cause of action for negligence against Cassity and Bible as individuals. However, unlike in *Wicks* or *Loeffler,* Zaborowski fails to aver sufficient facts, even in general terms, to support a finding that Cassity and Bible can be found negligent as a matter of law under the participation theory. There are no allegations that either Cassity or Bible took actions separate from the actions each took as corporate officers of Hospitality or

took personal steps to engage in negligent conduct. Accordingly, Count II is stricken.[7]

Under Count V of the complaint, Zaborowski attempts to set forth a cause of action for respondeat superior against Cassity and Bible as individuals. The complaint fails to establish what negligent actions Cassity and Bible took as individuals regarding the hiring and supervision of Hospitality's employees that is separate from actions either took as corporate officers. Cassity's and Bible's position as corporate officers cannot, in and of itself, lead to imposing personal liability for the alleged negligence of Hospitality. See *Chester-Cambridge Bank and Trust Co. v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943). Thus, Count V of the complaint is stricken with respect to Cassity and Bible only.

Regarding Count VIII of the complaint, Zaborowski seeks to set forth a cause of action for breach of fiduciary duty against Cassity and Bible as individuals. But, Zaborowski fails to aver that plaintiff decedent reposed a special confidence in either Cassity or Bible to the extent that the parties did not deal with each other on equal terms, either because of the overmastering dominance of Bible or Cassity or weakness, dependence or justifiable trust on the part of plaintiff decedent. Consequently,

---

7. As discussed *infra,* a claim for negligence per se is not a separate cause of action. Consequently, in order to maintain a cause of action for negligence per se, there must be an underlying cause of action for negligence. Since the court finds that Zaborowski cannot maintain a cause of action for negligence against either Cassity or Bible, Count IV of Zaborowski's complaint is stricken with respect to Cassity and Bible.

Count VIII of the complaint is stricken as to Cassity and Bible.

In Count XI of the complaint, Zaborowski attempts to set forth a wrongful death action against Cassity and Bible as individuals. The complaint is devoid of any allegations averring what negligent or reckless actions Cassity and Bible undertook that were separate from actions each took as corporate officers of Hospitality. Count XI, therefore, is stricken as to Cassity and Bible.

## B. *Breach of Contract*

Hospitality filed a preliminary objection in the nature of demurrer to Count VI (breach of contract) of Zaborowski's complaint. Zaborowski alleges that Hospitality breached an admissions agreement with the plaintiff decedent to provide her "with safe and reasonable care in a safe environment, as well as services which would help or attain or maintain the highest practicable, physical, mental and psychosocial well being, in accordance with a written care plan." Hospitality contends that this type of language is mere puffery[8] and that Zaborowski's claim is one sounding in tort, rather than contract. The court overrules Hospitality's objection.

Pennsylvania courts have not issued an opinion addressing the issue of whether a nursing home can be held liable to a resident for breach of contract.[9] But, several

8. Neither party has provided the court with a copy of the admissions agreement. Since the court is without the benefit of a copy of this agreement, the court believes that it is inappropriate at this juncture to address Hospitality's puffery argument.

9. In *Kelly v. Resource Housing of America Inc.,* 419 Pa. Super. 393, 615 A.2d 423 (1992), the trial court dismissed plaintiff's breach

other jurisdictions have held that a resident can maintain such a cause of action against a nursing home for breach of contract. See *e.g., Hutchins v. Bethel Methodist Home,* 370 F. Supp. 954 (S.D.N.Y. 1974); *Free v. Franklin Guest Home Inc.,* 397 So.2d 47 (La.App. 2d Cir. 1981); *Francis v. Health Care Capital Inc.,* 933 F. Supp. 569 (E.D. La. 1996); *McIntyre v. Transitional Health Serv.,* 1998 U.S. Dist. Lexis 13965 (M.D.N.C. 1998); *Guerin v. N.H. Catholic Charities Inc.,* 418 A.2d 224 (N.H. 1980).

This court believes *Callens v. Jefferson County Nursing Home,* 769 So.2d 273 (Ala. 2000), is persuasive. In *Callens,* the plaintiff brought a breach of contract action against a nursing home for failing to provide a "safe, clean and comfortable environment." See *id.* at 279. The Alabama Supreme Court rejected the nursing home's argument that the plaintiff's claim arises in tort, not in contract, and held that since "the duty to maintain sanitary conditions is expressed in the contract . . . a breach of that duty is actionable in contract." *Id.* at 279-80.

Instantly, Zaborowski has pled the existence of a contract between the plaintiff decedent and Hospitality. The language of the contract, as set forth in the complaint,

of contract claim against nursing home, but did not issue an opinion. Also, in *Chalfin v. Beverly Enterprises Inc.,* 741 F. Supp. 1162 (E.D. Pa. 1989), plaintiffs filed a summary judgment motion as to their breach of contract claim against a nursing home. The United States District Court of the Eastern District of Pennsylvania denied plaintiffs' motion for summary judgment because there was an issue of fact; however, the court did not expressly discuss whether Pennsylvania recognizes a cause of action by a resident against a nursing home for breach of contract. See *id.* at 1177-78.

imposes a duty to provide "safe and reasonable care in a safe environment," as well as "services which would . . . maintain the highest practicable, physical, mental and psychosocial well being." If the complaint is to be believed, Hospitality failed to meet these requirements and therefore breached the contract.

## C. *Fraud*

Hospitality, Cassity and Bible filed a preliminary objection in the nature of demurrer to Count IX (fraud) of Zaborowski's complaint. Zaborowski alleges that the defendants are liable for fraud because they made certain representations in a letter addressed to plaintiff decedent in order to induce her to remain a resident of Hospitality, and that the defendants had no intention of fulfilling these representations. Defendants contend that the language contained within the letter is mere puffery. The court sustains the defendants' objection.

To maintain a cause of action for fraud, a party must sufficiently plead "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) (footnote omitted) (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* §105 (5th ed. 1984)). A misrepresentation, however, must be distinguished from puffery. See *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 103, 337 A.2d 893, 903 (1975).

Puffery is "an exaggeration or overstatement expressed in broad, vague and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). Such speech is "offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable [person] would rely." W. Page Keeton, *Prosser and Keeton on the Law of Torts* §109 at 757 (5th ed. 1984). "It is common knowledge and may always be assumed that any seller will express a favorable opinion concerning what he has to sell; and when he praises it in general terms, without specific content or reference to facts, buyers" understand that they cannot literally rely upon such representations. Restatement (Second) of Torts §542 cmt. e (1978).

*Huddleston v. Infertility Center of America Inc.*, 700 A.2d 453 (Pa. Super. 1997), is instructive. In that case, plaintiff brought a cause of action for fraud against a surrogacy clinic based on its representations that it was the " 'premier' surrogacy program in the country and that it was designed and implemented to ensure the safety of its [clients]." See *id.* at 461. The court held that defendant's bravado was puffery of no legal consequence. See *id.*[10]

---

10. See also, *Berkebile, supra* (a brochure stating that "you are assured of a safe, dependable helicopter" and that the helicopter was "easy to operate" was puffery); *Maio v. Aetna Inc.*, 1999 WL 800315 (E.D. Pa. 1999) (advertising one's commitment to quality of care is puffery); *In re Managed Care Litigation.* 150 F. Supp.2d 1330, 1346 (S.D. Fl. 2001) (statements that "we are a high performance [HMO]," "quality is part of everything we do," and "nothing less will be accepted" were puffery).

Instantly, plaintiff relies upon the defendants' representation in the letter that "[a]s always, our priority is to provide quality care and to provide a safe and comfortable environment for our residents." This representation is similar to those at issue in *Huddleston*. It is so indefinite and elusive in meaning that the statement does not constitute a representation, but instead is mere puffery.

## D. *Breach of Fiduciary Duty*

Hospitality, Cassity and Bible filed a preliminary objection in the nature of demurrer to Count VIII (breach of fiduciary duty) of Zaborowski's complaint. Count VIII alleges that Hospitality, Bible and Cassity breached their fiduciary duties to plaintiff decedent with respect to her care and treatment. Hospitality, Cassity and Bible assert that their relationship with plaintiff decedent was one of caregiver to patient and was not fiduciary in nature. The court overrules the defendants' objection with respect to Hospitality.

Both parties incorrectly cite *Pomroy v. Department of Public Welfare,* 750 A.2d 395 (Pa. Commw. 2000), as broadly holding that a fiduciary relationship presumptively exists between a nursing home and its resident.[11] *Pomroy* involved a nursing home resident's appeal from an order of the Department of Public Welfare that discontinued the resident's medical assistance benefits. See *id.* at 396. The resident, who was severely injured in an automobile accident that left her in a perdurable coma, received $600,000 from a lawsuit filed on her behalf.

---

11. In fact, the court was unable to find any Pennsylvania case that sets forth such a holding.

See *id.* The funds were placed into bank accounts with authority to access the funds given to several signatories; none of these signatories were the nursing home or had any affiliation with the nursing home. See *id.*

The Commonwealth Court held that "[a]lthough the signatories were not . . . formally appointed to a fiduciary position . . . there can be little doubt that a fiduciary relationship arises where one is legally vested with [the] absolute power to control funds owned by an incompetent." *Id.* at 399. Thus, under *Pomroy,* Hospitality could be liable if it were vested with the absolute power to control the funds of the plaintiff decedent, and if at that time she was incompetent, but Zaborowski's complaint is devoid of such allegations. As a result, *Pomroy* is malapropos to the instant matter.

Under Pennsylvania law, a fiduciary relationship exists "when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." *PennDOT v. E-Z Parks Inc.,* 153 Pa. Commw. 258, 268, 620 A.2d 712, 717 (1993). (citations omitted) A fiduciary duty is "[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of any duty implied by law." *Id.*

Thus, a simple contract does not establish a fiduciary relationship. Instead, a fiduciary duty is created based upon the nature of the relationship between the parties involved.

The court concedes, as defendants argue, that fiduciary relationships are most often found in financial deal-

ings; however, the court believes that the relationship between a nursing home and its residents can be fiduciary in nature. This relationship was aptly described in *Schenck v. Living Centers-East Inc.*:

"[M]any if not most nursing home residents are in a vulnerable physical and/or mental state. Placing a loved one in such a facility necessarily entails trust on the part of the family as well as the resident. Since the residents reside in the home, the family has comparatively limited access and opportunity to learn if the resident is neglected or otherwise mistreated. If entrusting one's money to a receiver or conservator created a business relationship, one would hope at least in principle that entrusting a valued family member to the care of a business entity such as a nursing home would carry similar responsibilities." 917 F. Supp. 432, 438 (E.D. La. 1996).

This court, however, is reluctant to broadly hold that a nursing home resident is always subject to the "overmastering dominance" of the nursing home. Instead, like other courts that have previously addressed this issue, this court holds that the nature of the relationship between the nursing home and its resident must be determined on a case by case basis and the burden of establishing such a relationship rests with the plaintiff.

See *Gordon v. Bialystoker Ctr.*, 385 N.E.2d 285, 288 (N.Y. 1978) (holding that a nursing home was a fiduciary for a resident based on testimony that the residents of that home were "dependent on the home to take care . . . of their very livelihood, their existence"); *Davis v. Brickey*, 74 N.E.2d 710, 715 (Ill. 1947) (holding that a nursing home was a fiduciary for a resident only after

finding that she was "unable to serve herself in any way"); *Schenck,* 917 F. Supp. at 438 (denying summary judgment because factual development needed to determine if a fiduciary duty existed between a nursing home and its resident).

Instantly, the court believes that Zaborowski's cause of action for breach of fiduciary duty survives a demurrer. Zaborowski alleged that plaintiff decedent "was entrusted for her care and treatment into the exclusive care, custody, and control of " Hospitality. Pl.'s compl. ¶62. As a result of this entrustment, a fiduciary duty was formed between plaintiff decedent and Hospitality, which Hospitality subsequently breached by "failing to use the highest standard of care in regard to the care and treatment of [plaintiff decedent]." *Id.* at ¶¶63-64. But, Zaborowski will have the burden of proving that a fiduciary duty existed between the plaintiff decedent and Hospitality at trial. Zaborowski must adduce sufficient evidence showing that the plaintiff decedent was subject to the overmastering dominance of Hospitality or that her weakness, dependence or justifiable trust on Hospitality created a special confidence thereby imposing a fiduciary duty.

### E. *Unfair Trade Practices and Consumer Protection Law*

Hospitality, Cassity and Bible filed preliminary objections in the nature of demurrer to Count X (UTPCPL) of Zaborowski's complaint. Zaborowski alleges in ¶78 of his complaint:

"[t]hat the conduct of defendant Hospitality, Cassity and Bible . . . constitutes an unfair and/or deceptive act

or practice prohibited by the [UTPCPL] in any or all of the following respects:

"(a) In representing that goods and services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

"(b) In failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after contract for the purchase of goods or services is made; and

"(c) In engaging in fraudulent conduct, as set forth in Count IX [fraud], which creates the likelihood of confusion or misunderstanding[.]"[12]

Defendants Hospitality, Cassity and Bible collectively argue that the UTPCPL is inapplicable to the instant matter because the claim is based on statements regarding the medical services plaintiff decedent received while a resident of Hospitality. Cassity and Bible also argue that they cannot be held individually liable under the UTPCPL. The court sustains these objections.

The application of the UTPCPL to nursing homes is an issue of first impression.[13] Under the UTPCPL, it is unlawful to engage in unfair methods of competition or deceptive acts in connection with any trade or commerce.

---

12. As discussed above in part I.C. of this opinion, Zaborowski's fraud claim, set forth in Count IX of the complaint, is stricken because the representation relied upon is puffery. Therefore, sub-paragraph 78(c) will be stricken from the complaint.

13. This issue was considered in *Chalfin, supra,* but this court is not bound by decisions of federal courts construing state law. See *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 614, 182 A.2d 199, 203 (1962).

See 73 P.S. §201-3. The UTPCPL defines trade or commerce as "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 P.S. §201-2(3).

Although medical services are not expressly excluded under the UTPCPL, Pennsylvania courts have held that unfair or deceptive acts or practices pertaining to such services does not afford a private cause of action against providers of these services. In *Gatten v. Merzi,* the Pennsylvania Superior Court set forth this principle in a case alleging misrepresentations relating to a surgical procedure designed to facilitate weight loss:

"[E]ven though the [UTPCPL] does not exclude services performed by physicians, it is clear that the [UTPCPL] is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the [UTPCPL] to apply to physicians [regarding] medical services. . . . To impose the liability provided for by the [UTPCPL] to [statements regarding medical services to be rendered] would have the effect of making a physician the absolute guarantor of both his treatment and the anticipated results even in the absence of a specific contract warranting those results. . . . Such an interpretation of the [UTPCPL] . . . is absurd." 397 Pa. Super. 148, 151-52, 579 A.2d 974, 976 (1990), *allocatur denied,* 528 Pa. 611, 596 A.2d 157 (1991).

Furthermore, in *Foflygen v. Zemel,* 420 Pa. Super. 18, 36-37, 615 A.2d 1345, 1354 (1992), the Pennsylvania Superior Court extended the holding of *Gatten* by finding that the "UTPCPL is inapplicable to the providers of medical services."

Zaborowski relies upon *Chalfin, supra,* in support of his argument that the UTPCPL applies to nursing homes. In *Chalfin,* a decision that pre-dates *Gatten* and *Foflygen,* the court analyzed this issue. The court held that the UTPCPL applied to nursing homes reasoning that (1) the nursing home is a person under the statute, (2) the health care services provided by the nursing home fell within the ambit of trade or commerce and (3) the nursing home's representation that it would assist plaintiff in procuring Medicaid benefits, when in fact it never intended to was an unfair or deceptive act under the statute. See *id.* at 1174-1177.

Given the courts' interpretation of the UTPCPL, the statute does not create a private cause of action against a nursing home based upon its delivery of medical services, and therefore this court believes *Chalfin's* holding with respect to the UTPCPL must be narrowed. Nursing homes are not one-dimensional business enterprises, but instead they are hybrid organizations, offering both medical and non-medical services.[14] Thus, this court holds that

14. See Celia S. Gabrel, *An Overview of Nursing Home Facilities: Data from the 1997 National Nursing Home Survey,* advance data from vital and health statistics; no. 311, Hyattsville, MD: Nat'l Ctr. for Hlth. Statistics (2000) (the survey found that nursing homes provide a variety of services to its residents including medical services (provided by 96.9 percent of nursing home) and non-medical services such as nutrition (provided by 99.2 percent of nursing homes), social services (provided by 98.3 percent of nursing homes) and physical therapy (provided by 97.1 percent of nursing homes)).

a plaintiff can maintain a private cause of action against a nursing home under the UTPCPL based only upon the non-medical services provided by the nursing home.

Instantly, Zaborowski's complaint fails to differentiate between medical and non-medical services. Consequently, Zaborowski must file an amended complaint alleging that Hospitality's conduct constituting unfair or deceptive acts prohibited by the UTPCPL pertains to non-medical goods and services, and not those that are medical in nature.[15] Zaborowski must also file an amended complaint alleging what unfair or deceptive acts prohibited by the UTPCPL did Cassity and Bible engage in as individuals. If Zaborowski fails to file an amended complaint in accordance with this opinion, then Count X will be stricken.

## F. *Negligence Per Se*

Hospitality, Cassity and Bible filed a preliminary objection in the nature of demurrer with respect to Count IV (negligence per se) of Zaborowski's complaint. Zaborowski alleges that defendants' conduct violated certain regulations set forth in the Omnibus Budget Rec-

---

15. Defendants also filed preliminary objections in the nature of demurrer to Zaborowski's request for attorney fees and treble damages under the UTPCPL. However, since Zaborowski must file an amended complaint with respect to his claim pursuant to the UTPCPL, the court will not address these particular objections at this time. Defendants may file preliminary objections to Zaborowski's amended complaint, if he files one, raising these objections. The court notes that if Zaborowski fails to properly file an amended complaint properly setting forth a cause of action under the UTPCPL, then his requests for attorney's fees and treble damages under Count X will be stricken.

onciliation Act of 1987 (OBRA) and the Pennsylvania Health Care Facilities Act (PHCFA) and that such conduct gives rise to a cause of action for negligence per se. Defendants contend that Zaborowski cannot maintain a cause of action for negligence per se under OBRA or PHCFA because neither provides for a private cause of action. The court sustains this objection.

In support of their argument, defendants rely upon the decision in *Chalfin, supra.* In *Chalfin,* the court was confronted with the issue of whether the Medicare and Medicaid Acts provided for a private cause of action. See 741 F. Supp. at 1166. The court applied a four-part test announced in *Cort v. Ash,* 422 U.S. 66, 78 (1975), to determine this issue: (1) whether a statute was created for the plaintiff's special benefit, (2) whether there is evidence of legislative intent to create a private remedy, (3) whether a private remedy would be consistent with legislative purposes, and (4) whether the area is one traditionally relegated to the states.

Under the first part of the test, the court, after examining the legislative history of the statute and its regulations, concluded that the Medicare and Medicaid Acts were intended to protect the plaintiff since she was actually receiving or eligible to receive Medicaid. See *id.* at 1169. The court then considered the second and third parts of the test and concluded that a private cause of action did not exist. See *id.* The court reasoned there was "no indication that Congress intended, explicitly or implicitly, for a private care patient to bring a private action for money damages under the statute . . . [t]his omission . . . is indicative of a congressional intent that such not be implied" and that the purpose of the legislative

scheme was "primarily directed at the role of participating states in providing medical care with the assistance of federal funds."[16] *Id.*

Thus, this court agrees with defendants that OBRA, which is part of the Medicare/Medicaid Acts, does not provide for a private cause of action. Instead, OBRA is part of "a regulatory scheme designed to bring long-term care facilities into substantial compliance with federal Medicare and Medicaid requirements." *Tinder v. Lewis County Nursing Home Dist.,* 207 F. Supp.2d 951, 957 (E.D. Mo. 2001).

This court also does not believe that PHCFA provides for a private cause of action.[17] See 35 P.S. §448.101 et seq. (2002). PHCFA was enacted to "foster responsible private operation and ownership of health care facilities, to encourage innovation and continuous development of improved methods of health care and to aid efficient and

---

16. Although some federal courts have concluded that the Medicare/Medicaid Acts provide a private cause of action, the decision in *Chalfin* is in accordance with the majority of federal courts that have considered this issue. See *e.g., Solter v. Health Partners of Philadelphia Inc.,* 215 F. Supp.2d 533 (E.D. Pa. 2002); *Stewart v. Bernstein,* 769 F.2d 1088 (5th Cir. 1985); *Brogdon v. Nat'l Healthcare Corp.,* 103 F. Supp.2d 1322 (N.D. Ga. 2000); *Ayres v. Beaver,* 48 F. Supp.2d 1335 (M.D. Fla. 1999); *Illinois Health Care v. Suter,* 719 F. Supp. 1419 (N.D. Ill. 1989); *Fuzie v. Manor Care Inc.,* 461 F. Supp. 689 (N.D. Ohio 1977 ). But see *Roberson v. Wood,* 464 F. Supp. 983 (E.D. Ill. 1979); *Berry v. First Health Corp.* civ. no. 77-208 (D.N.H. Oct. 26, 1977), P28, 693 Medicare & Medicaid Guide (CCH) (1977).

17. This court is unaware of any Pennsylvania court that has considered this issue. The issue was considered in *Chalfin, supra,* where the court concluded that there was no private cause of action under PHCFA. As stated above, this court is not bound by decisions of federal courts construing state law. See *Rader, supra.*

effective planning using local health care systems agencies." *Chalfin,* 741 F. Supp. at 1171, citing Commonwealth of Pennsylvania, Laws of the General Assembly at 130, 132 (1979).

Section 448.201 of the PHCFA provides in part:

"The Department of Health shall have the power and its duties shall be: . . .

"(2) To exercise exclusive jurisdiction over health care providers, and jurisdiction over health maintenance organization in accordance with the provisions of this act. . . .

"(15) To enforce the rules and regulations promulgated by the department as provided in this act." 35 P.S. §448.201(2), (15).

Section 448.818 of the PHCFA provides:

"(a) Action brought by department—Whenever any person, regardless of whether such person is a licensee, has violated any of the provisions of this chapter or the regulations issued pursuant thereto, the department may *maintain an action in the name of the Commonwealth* for an injunction or other process restraining or prohibiting such person from engaging in such activity.

"(b) Civil penalty—Any person, regardless of whether such person is a licensee, who has committed a violation of any of the provisions of this chapter or of any rule or regulation issued pursuant thereto . . . may be assessed a civil penalty *by an order of the department. . . .*" 35 P.S. §448.817(a)-(b). (emphasis added)

Based upon its review of the statute, this court agrees with the conclusion in *Chalfin* that there is "no evidence that the Pennsylvania Legislature contemplated judicial

enforcement of [PHCFA] or the regulations promulgated thereunder. On the contrary, the comprehensive administrative plan indicates that the legislature intended to have all violations of [PHCFA] enforced by the Department of Health." *Chalfin,* 741 F. Supp. at 1172. As such, this court holds that PHCFA does not provide a private cause of action.

Zaborowski argues that even if OBRA and PHCFA do not create a private cause of action, he may still use the statute as the basis for a claim of negligence per se. Since negligence per se is not a separate cause of action, however, the court will not address this argument at this time. As such, Zaborowski may file an amended complaint repleading the allegations of negligence per se as part of his cause of action for negligence.

## G. *Third Party Beneficiary*

Hospitality, Cassity and Bible filed a preliminary objection in the nature of demurrer with respect to Count VII (third party beneficiary) of Zaborowski's complaint. Zaborowski argues that although plaintiff decedent was not expressly named as a third party beneficiary in the provider agreement between Hospitality and Medicare and Medicaid, she was an intended beneficiary under the circumstances.[18] Defendants contend that this claim should be dismissed because plaintiff decedent was, at best, an incidental beneficiary. Defendants further argue that since OBRA does not provide for a private cause of

---

18. The court notes that neither party submitted a copy of the provider agreement in any of its pleadings.

action Zaborowski cannot sue as a third party beneficiary. The court sustains this objection.

The court notes that the absence of an implied cause of action under OBRA is not determinative of whether Zaborowski may sue as a third party beneficiary under the provider agreement. The issue is whether a nursing home resident is an intended third party beneficiary of a provider agreement between a nursing home and Medicare and Medicaid, not whether Congress intended to create a private cause of action.

This issue is one of first impression.[19] Under Pennsylvania law, "a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, . . . *unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg,* 530 Pa. 336, 372-73, 609 A.2d 147, 150-51 (1992); citing *Spires v. Hanover*

19. Other jurisdictions that have considered this issue have concluded that nursing home residents are intended third party beneficiaries to a contract between a nursing home and Medicare and Medicaid. See *Smith v. Chattanooga Med. Investors Inc.,* 62 S.W.3d 178 (Tenn. Ct. App. 2001); *Fuzie v. Manor Care Inc.,* 461 F. Supp. 689 (N.D. Ohio 1977). This court, however, concludes that the reasoning in those decisions is inconsistent with Pennsylvania case law. See *Drummond v. University of Pennsylvania, City of Philadelphia,* 651 A.2d 572 (Pa. Commw. 1994) (holding that a third party is not an intended beneficiary under the circumstances based on the fact that she will benefit more directly from the performance of a contract with a governmental entity than other members of the public).

*Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950); *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983). (emphasis in original)

In *Scarpitti,* the plaintiffs, who were lot owners of a residential subdivision, brought a cause of action against the subdivision architect for failing to uniformly enforce deed restrictions. See *id.* at 368, 609 A.2d at 148. The plaintiffs maintained that the subdivision developer, who sold the lots to the plaintiffs, had an agreement with the architect to properly review and approve construction plans of other lot purchasers within the subdivision. See *id.* The architect breached this agreement when he approved construction violating the deed restrictions. See *id.* The Pennsylvania Supreme Court held· that although the plaintiffs were not explicitly identified in the agreement, they were intended beneficiaries of this agreement. The court reasoned: "the architect is the promisor, promising to enforce deed restrictions which carry out the developer's intention to benefit the homeowners. The developer, the promisee, intends that the homeowners have the benefit of the architect's performance. Thus, it is patently clear that the parties, by establishing a vehicle for the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the Winchester South Subdivision, at the time the contract was entered into. Although not individually named, [plaintiffs] were part of a limited class of persons intended to benefit from the agreement between [the architect] and [the subdivision developer], thus [are intended third party beneficiaries]." *Id.* at 373-74, 609 A.2d at 151.

Here, Hospitality and Medicare and Medicaid executed a provider agreement whereby Hospitality would pro-

vide certain goods and services to Medicare and Medicaid patients in exchange for monetary reimbursements from Medicare and Medicaid. There are no allegations in the complaint that would support the conclusion that under the circumstances, Hospitality and Medicare and Medicaid entered into the provider agreement with the intention that plaintiff decedent be an intended beneficiary. Instead, plaintiff decedent was an incidental beneficiary and lacks standing to bring a breach of contract action under the provider agreement.

## H. *Punitive Damages*

Hospitality, Cassity and Bible filed preliminary objections in the nature of demurrer with respect to Zaborowski's request for punitive damages in Counts I-XI because the allegations set forth in the complaint do not justify awarding punitive damages.[20] The court overrules these objections.[21]

Pennsylvania courts have adopted the Restatement (Second) of Torts §908 to examine punitive damages. See *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). Section 908(2) states:

---

20. In Count III of the complaint, Zaborowski alleges a cause of action for negligence against Nubridge only. The defendants' preliminary objection to Count III is clearly improper and will not be considered by the court.

21. Since Counts IV (negligence per se), VII (breach of third party beneficiary) and IX (fraud) are stricken from the complaint with respect to these defendants, their preliminary objections to Zaborowski's claim for punitive damages under these counts are moot. Additionally, since Counts II, V, VIII and XI are stricken from the complaint with respect to Cassity and Bible, Cassity's and Bible's preliminary objections to Zaborowski's claim for punitive damages are moot.

"(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." Restatement (Second) of Torts §908(2) (1979).

The essential fact needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous. See *Smith v. Brown,* 283 Pa. Super. 116, 120, 423 A.2d 743, 745 (1980). Outrageous conduct is that which has been "done with a bad motive or with a reckless indifference to the interests of others." *Focht v. Rabada,* 217 Pa. Super. 35, 38, 268 A.2d 157, 159 (1970).

"Reckless indifference to the interests of others, or as it is sometimes referred to, wanton misconduct, means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Smith,* 283 Pa. Super. at 120, 423 A.2d at 745, quoting *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 574, 212 A.2d 440, 443 (1965).

The allegations contained in the complaint, which the court must accept as true, show that Hospitality, with reckless indifference to plaintiff decedent's health, delivered substandard care to her resulting in various medical ailments culminating in her death. Hospitality further failed to properly hire, train and supervise its employees to ensure that adequate care was delivered to

plaintiff decedent. The court concludes based upon these allegations that Zaborowski has presented sufficient averments that could warrant the imposition of punitive damages against Hospitality under Counts I, V, VIII and XI of the complaint.

## I. *Attorney's Fees*

Hospitality, Bible and Cassity filed a preliminary objection in the nature of demurrer to Zaborowski's request for attorney fees in Counts I, II, IV,[22] V, VI, IX and X[23] of his complaint due to failure to conform to law.[24] The court sustains defendants' preliminary objections with respect to Counts I, V and VI.

Attorney fees cannot be recovered unless provided for by statute. See *Corace v. Balint,* 418 Pa. 262, 271, 210 A.2d 882, 887 (1965). Zaborowski fails to provide the court with any statutory authority permitting the recovery of attorney fees for Counts I (negligence as to Hospitality), V (respondeat superior), and VI (breach of contract). Since the court is not aware of any statutes permitting recovery of attorney fees under these theories, the requests are stricken.

---

22. Count IV (negligence per se) is not a separate cause of action; therefore, Zaborowski's claim for attorney fees under this count is stricken.

23. Zaborowski's request for attorney's fees under Count X is addressed in footnote 15 of this opinion.

24. Since Counts II and IX are stricken from the complaint, *supra,* defendants' preliminary objections to Zaborowski's claim for attorney fees under these counts are moot.

## II. MOTION FOR MORE SPECIFIC PLEADING

Hospitality, Cassity and Bible filed preliminary objections in the nature of a motion for a more specific pleading with respect to subparagraphs (d), (k) and (r) of paragraph 25; subparagraphs (a), (f), (h), (i), (k), (l), (m) and (n) of paragraph 30 and subparagraphs (a), (d), (l), (s), (u), (v) and (z) of paragraph 42 of Zaborowski's complaint. Defendants contend that the allegations set forth in the above listed paragraphs are overly broad, vague and ambiguous claims of negligence and should be stricken. The court overrules these objections in part and sustains them in part.

Under Pa.R.C.P. 1019(a), a party is required to allege the material facts on which a cause of action is based in a concise and summary form. To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "sufficiently specific so as to enable [a] defendant to prepare [his] defense." *Smith v. Wagner,* 403 Pa. Super. 316, 319, 588 A.2d 1308, 1310 (1991). (citations omitted)

The court overrules this objection with respect to paragraph 25(d) and (k); paragraph 30 (a) and (l); and paragraph 42 (a), (d), (1), (s), (u), (v) and (z). Upon review of these paragraphs, the court finds that Hospitality, Cassity and Bible are able to understand the nature of Zaborowski's claims and can prepare their defense thereto.

The court sustains this objection with respect to paragraph 25(r), which provides that Hospitality was negligent "[i]n failing to adopt effective administrative and patient care policies to govern the operation of the facil-

ity." Hospitality cannot prepare an adequate defense to such an allegation. For instance, Zaborowski fails to set forth the standard by which Hospitality's administrative and patient care policies fell below, how its policies fell below this standard or what constitutes an effective administrative and patient care policy. As a result, paragraph 25(r) of the complaint is stricken. Additionally, the court finds that paragraph 30(f), (h), (i), (k), (m) and (n) are too vague and are stricken.

Hence this order:

## ORDER

And now, this 10th day of Decembers, 2002, upon consideration of defendants Hospitality Care Center of Hermitage Inc.'s, Faye M. Cassity's and Robert W. Bible's preliminary objections to plaintiff's complaint it is hereby ordered as follows:

(1) Defendants Cassity's and Bible's preliminary objections in the form of a demurrer as to Counts II, IV, V, VII, VIII, IX, X and XI are granted with leave to amend as to Counts II, V, VIII, X and XI.

(2) Defendants' preliminary objection as to Count III is denied.

(3) Defendant Hospitality Care Center of Hermitage Inc.'s preliminary objections in the nature of a demurrer are denied as to Counts VI and VIII , but are granted as to Counts IV, VII, IX and X with leave to amend as to Count X.

(4) Defendants' preliminary objections in the form of a motion to strike the claim for punitive damages are denied as to Counts I, V, VIII and XI.

506

(5) Defendants' preliminary objection in the form of a motion to strike paragraph 78(c) is granted without leave to amend.

(6) Defendants' preliminary objections in the form of a motion for a more specific pleading are granted with respect to paragraphs 25(r), 30(f), (h), (j), (k), (m) and (n) and denied as to the remaining paragraphs.